**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 25-180-DLB**

**JAMILA ISSAHAKU**                                                                      **PETITIONER**

**v.**                                                     **ORDER**

**SAMUEL OLSON, et al.**                                                          **RESPONDENTS**

* * * * * * * * * *

## I.    INTRODUCTION

This matter is before the Court on Petitioner Jamila Issahaku's Motion to Enforce (Doc. # 11).  Respondent's having filed their Response (Doc. # 13) and Petitioner having filed her Reply (Doc. # 14), this matter is ripe for the Court's review.  For the following reasons, the Court will **grant** the Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 2025, Issahaku filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1).  On December 10, 2025, this Court granted the Petition, ordering Respondents to immediately release Petitioner, or in the alternative, provide her with a bond hearing.  (Doc. # 9).  On December 17, pursuant to this Court's Order, Respondents filed a Status Report, noting that an Immigration Judge ("IJ") held a bond hearing for Petitioner on December 16, 2025, and denied bond based on the conclusion that Petitioner was a flight risk.  (Doc. # 10).

On February 3, 2026, Petitioner filed a Motion to Enforce, arguing that the IJ "did not comply with this Court's order or with due process because the immigration court

1

improperly placed the burden of proof on the [Petitioner], rather than requiring the Government to justify continued detention." (Doc. # 11 at 1).  Petitioner sought immediate release or, alternatively, "a new constitutionally compliant bond hearing."  (*Id*.).  On February 13, 2026, this Court directed Respondents to respond to Petitioner's Motion. (Doc. # 12).  Respondents now having filed their Response (Doc. # 13) and Petitioner having filed her Reply (Doc. # 14), the matter is ripe for the Court's review.

## III.   ANALYSIS

Petitioner's Motion alleges that "[b]ecause the immigration court applied the wrong burden of proof, the hearing did not provide the process required by the Constitution or this Court's habeas order."  (Doc. # 11 at 2).[1]  Specifically, Petitioner alleges that by shifting the burden to Petitioner, the immigration court required "petitioner to prove that she is not a flight risk" when in fact "due process requires the Government to justify continued detention at a bond hearing."  (*Id*. at 3-4 (citing *Rodriguez v. Robbins*, 804 F.3d 1060, 1087 (9th Cir. 2015))).   In their Response, Respondents argue that the "BIA has consistently held that § 1226(a) places the burden of proof on the noncitizen to show that he or she merits release on bond."  (Doc. # 13 at 4).

---

[1]      Petitioner additionally submits that if this Court finds that the burden is on her, the "Immigration Judge failed to consider the evidence submitted and the representations of Counsel in finding that she was a flight risk." (Doc. # 11 at 4).  However, courts do not have jurisdiction to review discretionary decisions made by an IJ.  Notably, however, "this limitation applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases. It does not block lawsuits over the 'extent of the Government's detention authority under the "statutory framework" as a whole.'" *Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (quoting *Jennings v. Rodriguez*, 583 U.S. 295-96 (2018)).  Therefore, to the extent Petitioner asks this Court to review a discretionary decision by an IJ, it declines to do so.  The Court will focus only on whether an immigration bond hearing pursuant to § 1226(a) that places the burden of proof on the noncitizen to show they are not a danger or a flight risk is constitutionally inadequate.  Something that is well within this Court's jurisdiction to consider.  *See Figueroa v. McDonald*, 680 F. Supp. 3d. 18, 22 (D. Mass May 14, 2018) ("This type of constitutional claim 'falls outside the scope of § 1226(e)' because it is not a matter of the IJ's discretionary judgment.").

### A.  Relevant Framework

It is not disputed that § 1226(a) is silent as to what burden of proof applies in bond hearings, and who bears that burden.  Following the 1996 enactment of the IIRIRA, a noncitizen seeking release bore the burden of "demonstrat[ing] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  8 C.F.R. § 236.1(c)(8).  It is important to note, however, that this regulation applied *only* to the custody determination by the arresting officer.  Nevertheless, the BIA soon adopted that standard and applied it to 1226(a), requiring a noncitizen detained pursuant to § 1226(a) to demonstrate "to the satisfaction of the immigration judge that he or she merits release on bond."  *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *see also Matter of Fatahi*, 26 I. & N. 791, 795 n. 3 (B.I.A. 2016) (stating that the BIA has "consistently held that aliens have the burden to establish eligibility for bond while proceedings are pending.").

Respondents urge the Court to follow relevant BIA guidance.  However, pursuant to the Supreme Court's recent decision in *Loper Bright Enter. v. Raimondo*, courts "need not defer to any agency interpretation of law just because a statute is ambiguous."  603 U.S. 400, 412-413 (2024).  The Court acknowledges and considers the BIA's interpretation.  Nevertheless, for the sake of completeness, this Court will look towards other courts for additional guidance on the matter.  While this issue has not yet been addressed by the Sixth Circuit, there is persuasive authority from various circuit courts to guide this Court in its analysis.

The Court first turns to *Hernandez-Lara v. Lyons,* 10 F.4th 19 (1st Cir. 2021), a First Circuit Court of Appeals case with facts similar to the ones before this Court.  In

*Hernandez-Lara,* the petitioner, a native and citizen of El Salvador, entered the United States in 2013 and was detained in 2018. 10 F.4th at 23. One month after being detained, she was granted a custody redetermination hearing in which the IJ denied bond after placing the burden on the petitioner. *Id*. at 24. The petitioner subsequently filed a petition for writ of habeas corpus, arguing that her Fifth Amendment rights were violated when the IJ placed the burden on her, rather than the government. *Id*. at 25.

In its analysis, the First Circuit determined that the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 893 (1976), was the appropriate standard to use in answering whether the "Due Process clause of the Fifth Amendment entitles a noncitizen detained pursuant to Section 1226(a) to a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the noncitizen is dangers or a flight risk." *Id*. at 27. Beginning with the first factor, private interest, the court concluded that there was "no question" that the petitioner suffered a substantial deprivation of liberty when she was "incarcerated alongside criminal inmates . . . for over ten months." *Id*. at 28. The Court additionally reasoned that because the "exact length of detention under section 1226(a) is impossible to predict and can be quite lengthy" the first factor weighed heavily in the petitioner's favor. *Id*. at 29.

The second factor, risk of erroneous deprivation, was also found to weigh in petitioner's favor. *Id*. at 30. The court considered that because noncitizens (1) have no right to counsel; (2) experience difficulty in gathering evidence on their behalf; (3) often lack full proficiency in English; (4) are not familiar with immigration law and procedures; and (5) face the difficulty of proving a negative, the "detainee often starts out behind the eight ball in a bond proceeding, and the opportunities for prejudicial error abound." *Id*. at

4

30-31.  As a result, the court reasoned, "the odds of error in the weighing of such evidence (or its absence) are likely reduced by placing the burden on the government, as in virtually all other instances of proposed lengthy detention."  *Id*. at 31.

Finally, as to the third factor, government's interest, the court acknowledged that "prompt executing of removal orders is a legitimate governmental interest."  *Id*. at 32. However, the court clarified that "[w]hat is at stake . . . is not the power of the government to detain noncitizens who may cause harm or flee during removal proceedings, but rather who should bear the burden of proving noncitizens pose a danger or risk of flight."  *Id.* The Court considered various factors such as interest in obtaining records, impact on society, and general financial costs.  *Id*. at 33.  "In short" the court concluded, "given the risk that the current procedures lead to many instances of needless detention, entailing substantial social and financial costs, the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative."  *Id*.  Thus, the First Circuit held that "the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)."  *Id*. at 39.

In *Velasco Lopez v. Decker*, the Second Circuit conducted a similar analysis.  978 F.3d 842 (2d. Cir. 2020).  There, the petitioner received a custody redetermination hearing upon detention, however he was denied bond after the burden was placed on him.  *Id*. at 847.  The petitioner was then detained for an additional fourteen months before filing a petition for a writ of habeas corpus.  *Id*.  Similar to the First Circuit, the Second Circuit concluded that the *Mathews* test governed its analysis.  *Id*. at 851.  After analyzing all three factors, the court reasoned that "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be

paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id*. at 854. Thus, the Second Circuit "conclude[d] that the district court appropriately addressed the [due process] violation by ordering a new hearing at which the Government was called upon to justify continued detention." *Id*. at 855.

District courts throughout the country have similarly concluded that the burden of proof to show that the noncitizen is a danger or flight risk should be on the government. *See Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026) ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying [the petitioner's] continued detention"); *Darko v. Sessions*, 342 F. Supp. 3d. 429, 435 (S.D.N.Y. Oct. 19, 2018) ("Since *Jennings*, a number of district courts have taken up the question left open by the Supreme Court, and there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified."); *Singh v. Barr*, 400 F. Supp. 3d. 1005, 1018 (S.D. Cal. Aug. 30, 2019) ("The Court agrees with the reasoning of its sister courts and concludes that the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving by clear and convincing evidence, that continued detention is justified at § 1226(a) bond redetermination hearing."); *Alvarez Figueroa*, 680 F. Supp. 3d. at 26 ("[T]he Constitution requires placing the burden of proof on the government in § 1226(a) custody redetermination hearings."); *Riestra v. FNU LNU*, No. 2:26-cv-006360-KG-JHR, 2026 WL 905500, at * 2 (D.N.M. Apr. 2, 2026) ("Petitioner's prolonged detention violates the Fifth Amendment's Due Process Clause, and therefore she is entitled to a bond hearing where the Government bears the burden of proof."); *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87-88

6

(W.D.N.Y. Oct. 29, 2019) ("The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks '[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the [Government]'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))).

The Court finds the above case law persuasive. Petitioner's private interest in remaining free from detention is substantial, and the current procedures create a substantial risk of harm. Specifically, as seen here, noncitizens may be subject to indefinite detention. Finally, the government's interest does not outweigh the risk of indefinite detention. While the Court certainly acknowledges that the government has a legitimate interest in ensuring a noncitizen's appearance and protecting its citizens, as numerous courts have concluded, shifting the burden imposes minimal additional hardships on the government. Moreover, as some courts have acknowledged, shifting the burden may further support the government's interests. *See Hernandez-Lara*, 10 F.4th at 33 ("[L]imiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention."); *Velasco Lopez*, 978 F.3d at 855 ("When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time, as in this case, it separates families and removes the community breadwinners, caregivers, siblings and employees. The Government articulates no public interest that any of this serves and we see none.").

The Court acknowledges the circuits that have come to the opposite conclusion, which Respondent argues this Court should follow.  (*See* Doc. # 13 at 6).  Specifically, Respondent points out that the Third, Ninth, and Fourth Circuits have concluded that placing the burden of proof on a noncitizen to prove they are not a danger nor a flight risk does not violate the Due Process Clause of the Fifth Amendment.  *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274 (3d. Cir. 2018); *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022); *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022).  However, these decisions provide, at most, persuasive authority.  The Court agrees with the First and Second Circuit's *Mathews* analysis, and in the absence of a controlling decision from the Sixth Circuit, respectfully declines to adopt the Third Circuit's holding in *Borbot*,[2] the Ninth Circuit's holding in *Rodriguez Diaz* or the Fourth Circuit's holding in *Miranda*.

Accordingly, the Court concludes that Petitioner's Fifth Amendment Due Process right was violated when the IJ placed the burden on her in his custody redetermination hearing.  The Court finds that the appropriate remedy is granting her request for a constitutionally adequate bond hearing.  Additionally, consistent with the other courts who have concluded that the government must bear the burden of proof, this Court concludes that a clear and convincing standard "provides the appropriate level of procedural protection."  *Velasco Lopez*, 978 F.3d at 856.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)    Petitioner's Motion to Enforce (Doc. # 11) is **GRANTED**;

---

[2]    Additionally, as distinguished by the First Circuit in *Hernandez-Lara*, focused on "a challenge based on the length of detention in which the petitioner sought 'to compel a *second* bond hearing despite *alleging no constitutional defect* in the one he received.'"  10 F.4th at 34 (quoting *Borbot*, 906 F.3d at 279) (emphasis in original).

(2)    Respondent is **ORDERED** to **immediately release** Petitioner, or in the alternative, provide her with a **constitutionally adequate bond hearing in which the government bears the burden of proof** under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order**; and

(3)    Respondent shall file a Status Report with this Court **on or before April 30, 2026** to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 16th day of April, 2026.

**Signed By:**

_David L. Bunning_

**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Cov2025\25-180 MOO Motion to Enforce.docx